# Cowan, Liebowitz & Latman, P.C.

Law Offices

1133 Avenue of the Americas • New York, NY 10036-6799

(212) 790-9200 • www.cll.com • Fax (212) 575-0671

**Ronald W. Meister**
Direct (212) 790-9255
rwm@cll.com

November 24, 2010

**Filed Electronically**

Hon. Michael A. Shipp, U.S.M.J.
District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

    Re: Renaissance Carpet and Tapestries, Inc. v. S&H Rugs et ano.
        Civil Action No. 09 -CV- 00632 (SRC-MAS)

Dear Judge Shipp:

The parties in the above-entitled action submit this joint status letter and report of discovery disputes pursuant to Your Honor's order of November 11, 2010, in anticipation of the status conference of December 1.

Status of the Case

    Plaintiff's Position

Fact discovery in this matter concluded on August 30, except for the disputes described in the Court's order of November 11. The parties last conferred with the Court in person on November 10. As a result of that conference, and the Court's order of the following day, defendants were to provide certain discovery materials by November 17, expert depositions are to conclude by December 1, and defendant Wilbush is to appear for a deposition. Plaintiff conducted defendants' expert's deposition on November 23, and has requested that Mr. Wilbush appear for his deposition on November 30. Though defendants have produced e-mail messages for a portion of the period at issue, plaintiff considers that production inadequate, as described in the body of this letter.

    Defendant's Position

Defendant agrees that fact discovery is closed, except for the deposition of Mr. Wilbush as to documents that were produced after his initial deposition. These consist of a) sales records and b) e-mail and images produced in response to requests made by plaintiff after Mr. Wilbush's

**Cowan, Liebowitz & Latman, P.C.**
Hon. Michael A. Shipp, U.S.M.J.
November 24, 2010
Page 2

deposition. Defendants have engaged in an exhaustive search to ensure that documents (including e-mails_ and images were not omitted from their prior production. Defendants have made these productions notwithstanding its objections to the burden, cost and tenuous relation to plaintiff's claims in order to address plaintiff's baseless claims of spoliation.

Statement of Discovery Disputes

1. Spoliation of Evidence

Plaintiff's Statement

After the Court authorized plaintiff to move for sanctions for defendants' failure to preserve evidence, defendants sought and obtained additional time to report on their efforts to recover deleted documents and make additional production. On October 27, defendants stated that they had produced all documents available to them except e-mails, and on November 17, they produced a disc containing e-mails. It appears from counsel's subsequent letter to us that these are not materials that had been deleted and later recovered, but rather documents from a recent period that were available all along but simply had not been produced. It is worth recalling in this context that, for almost a year, defendants denied that sales records existed, until their own salesman testified otherwise; and that defendant Wilbush was deleting vital records all the while he was representing that they never existed.

Moreover, despite the Court's November 5 order directing production of the all-important design numbers, which defendant Wilbush had testified were the only way to determine how many rugs in each infringing design had been sold, those design numbers have never been produced. As a result, at the end of this long trail, defendants have still not produced information about the number of rugs they sold bearing the infringing designs.

Because some of the newly-produced documents are of considerable interest, the failure to preserve the deleted records is even more troubling. There remains a gaping hole for documents from earlier than mid-2008, less than a year prior to the commencement of this action. Even the e-mails that were produced are incomplete or missing their attachments, and very many of the images produced are of such poor quality that it is impossible to tell even whether they are the designs at issue in this case, to say nothing of the impossibility of comparing them to plaintiff's designs. We ask that defendants be directed to provide the best images available to them, in their native format, and to certify that they have done so. As to those e-mails that were produced, we ask that defendants provide complete copies, with legible attachments.

Defendants' Statement

Plaintiff has been granted leave to move for sanctions. We request that a briefing schedule be set. In our view, the claims lack substantial merit and the continuous recitation of

28616/002/1207466.1

**Cowan, Liebowitz & Latman, P.C.**
Hon. Michael A. Shipp, U.S.M.J.
November 24, 2010
Page 3

disputed facts in status reports is improper. If adversary counsel thinks grounds exist for such a motion, let him proceed.

With regard to the scope of the production, we extracted 33,000 e-mails from our client's "POP 3" e-mail accounts the earliest dating from May 2007. We used such keywords as "renaissance", "Aubusson", "Savonneire" and each of the S&H inventory numbers to cull the list (a copy of the keys and search results is attached) and then reviewed those items and eliminated from the production only those documents that clearly were not relevant, primarily by eliminating as non-responsive those items that could be identified as relating to rugs that are not at issue in this case. From the 33,000 e-mails we identified 3-5 items that were responsive and not previously produced. However, when an item referred to Aubusson or Savonneire, and could not be identified as related to a design that is not at issue in this case, it was produced. This resulted in the addition production of documents do not appear to be relevant, but could not be categorically excluded.

While adversary counsel complains about poor quality documents, he has made no attempt to identify the e-mails, to identify why they are of particular interest, or to call to our attention what he thinks is missing. Had he done so, we certainly would have responded accordingly. As far as we know, the production is complete.

We also identified in the production routine correspondence with the client related to this case, but the correspondence was non-responsive. Moreover, such items are generally not logged for privilege and unless adversary counsel is prepared to do likewise (*i.e.*, provide a log of litigation correspondence) we object to the suggestion that this is required.

Finally, we note that Mr. Meister has mis-stated the substance of a court order, contending that we were "ordered to produce design numbers." As discussed below, S&H does not track the design numbers of manufacturers. The court made no such order and, more significantly, no such "design" numbers exist except in the importation documents, which plaintiff has long had.

    2.    <u>Defendants' Claims of Confidentiality</u>

<u>Plaintiff's Statement</u>

The Court resolved the major aspect of this issue on November 10, holding that defendants' claim of confidentiality for Mr. Wilbush's invocation of the Fifth Amendment was improper.

As we described in the October 29 status letter, defendants have also designated all the recently produced images of rugs as "CONFIDENTIAL." That designation is inappropriate. These are not confidential business records of any sort; to the contrary, they are pictures of rugs that defendants displayed on their website and in their showroom, to be seen by and sold to the

28616/002/1207466.1

Cowan, Liebowitz & Latman, P.C.
Hon. Michael A. Shipp, U.S.M.J.
November 24, 2010
Page 4

public. Plaintiff has duly objected to this designation of confidentiality and asks that the Court, pursuant to the Confidentiality Order, sustain that objection.

We note that, while defendants have stated that they might seek confidential status for additional portions of Mr. Wilbush's deposition, they have not done so.

Defendants' Statement

Plaintiff objects to the designation of rug images as confidential. While the individual images are not confidential, the collection of images is proprietary, confidential and particularly sensitive. The collection represents the defendant's inventory, item selection and, when read together with other documents in the case, pricing and sales activity for those items. The selection of products represents the defendant's commercial judgments about the market and its success in predicting market demands and tastes. This information should be permitted to fall into the hands of a competitor for such uses as product selection and pricing.

3. Expert Disclosure and Privilege Log

Plaintiff's Statement

Defendants' expert report is signed and certified by three appraisers, Elin Lake-Ewald, Barry Leo Delaney, and David Castriota. Defendants initially claimed that their counsel's communications with Mr. Castriota and Mr. Delaney were privileged, and provided a privilege log of such communications. No communications with Ms. Lake-Ewald were produced or listed on the privilege log. At the November 10 conference, the Court directed defendants to comply with the current rules of procedure with regard to claims of privilege, rejecting defendants' reliance upon the as-yet-unadopted version of Rule 26. Defendants thereupon provided the communications with David Castriota, their testifying expert, but not their communications with Mr. Delaney, who is identified as the report's Senior Appraiser, who signed it and certified its contents, and whose resume is included as part of the report. Defendants contend that, because Mr. Delaney is not testifying, his communications are privileged. Plaintiff maintains that defendants cannot rely on Mr. Delaney's credibility as signatory and certifier of the report, and at the same time shield his communications from discovery. Moreover, plaintiff is entitled to know Mr. Delaney's role in preparing the report that provides the basis for Mr. Castriota's testimony. Having disclosed his identity and relied on Mr. Delaney's credibility, defendants cannot shield his communications from disclosure.[1]

As to the issue of Mr. Castriota's prior testimony, which defendants raise below, it is unclear what relief defendants seek. Defendants have long been aware, and indeed disclosed to plaintiff, that Mr. Castriota had testified in a prior case against plaintiff. No final transcript of his

---

[1] These redacted documents are numbered 9, 12-18, 25, 32-38, 112, 115-64, 170-71, 173-74, 176-77, 179, and 183-84.

28616/002/1207466.1

testimony was prepared, though plaintiff has a rough uncorrected transcript. Plaintiff is entitled to make use of Mr. Castriota's prior testimony to impeach his credibility, if appropriate, and there is no requirement that plaintiff supply defendants with a copy of the rough transcript, for which plaintiff paid, of their own witness's prior testimony.

As to defendants' request for costs incurred in deposing Mr. Castriota, plaintiff recognizes its obligation for Mr. Castriota's fee for attendance at his deposition, but not for attorney's fees, which were neither requested nor authorized by rule. Plaintiff was first informed yesterday of Mr. Castriota's $100 an hour fee for attendance at his deposition, and agrees to pay that amount.

Defendants' Statement

Defendants' sole testifying expert pursuant to its disclosures is David Castriota. Mr. Castriota testified this week that he alone prepared the report and that he alone is solely responsible for its content. Mr. Delaney, who consults with the same firm, will not testify or otherwise render an opinion. Mr. Castriota testified that Mr. Delaney did not participate in the preparation of the report or author or contribute to its contents. As a non-testifying expert, substantive communications with Mr. Delaney are attorney work product, not subject to discovery except in extraordinary circumstances. We do not, as plaintiff alleges, rely on Mr. Delaney's credibility in preparing the report. The items not produced consist of a CV and a list of cases in which Mr. Delaney has testified. We elected not to use Mr. Delaney as a testifying expert and accordingly these materials, which were part of our decision, are protected work product.

Our testifying expert, David Castriota, has been deposed once before by plaintiff's counsel. That case also involved alleged infringement of Renaissance's allegedly copyrighted designs, and Mr. Castriota provided expert testimony in that matter, also regarding antique French rugs, including two with identical designs to the rugs in this case. Defendants requested on November 15, 2010 that if this testimony would be used in any way that it be produced to Defendant's counsel that we might have an opportunity to review it ourselves prior to the deposition. It was not produced.

During the deposition of David Castriota which took place on November 23, 2010 (the day before this letter is due to be filed) an employee of Renaissance who was attending the deposition brought a copy of Mr. Castriota's testimony in the case of <u>Renaissance Carpet and Tapestries, Inc. v. Samad Brothers, Inc.</u>, 09 - cv - 6341 (S.D.N.Y. 2010) to the deposition and reviewed it continuously during the proceedings. Counsel for Plaintiff also mentioned during the deposition that he had reviewed this prior testimony and asked a line of questions that were founded in his prior testimony. Defendants object to the use of this deposition transcript, since it was not timely produced.

**Cowan, Liebowitz & Latman, P.C.**
Hon. Michael A. Shipp, U.S.M.J.
November 24, 2010
Page 6

Defendants also seek witness fees incurred in deposing David Castriota, as is allowed under the Federal Rules of Civil Procedure. Defendants have requested this by e-mail on November 12, 2010.

   4.   Defendants' Inventory

Plaintiff's Statement

Plaintiff's interrogatories, served in December 2009, asked defendants to "[i]dentify, by size and number, the S&H Rugs [defined to mean the rugs with designs at issue in this case] that Defendants have in inventory." Defendants initially provided three inconsistent responses to this interrogatory: a response on January 25, an amended response on February 22, and a warehouse production ordered by the Court over defendants' objection on July 2. During the warehouse visit, defendants produced rugs in only three designs, saying they were the only rugs in inventory that related to this case, and barred access to any other rugs.

Because of these discrepancies, the Court on November 10 directed defendants to provide an accurate accounting of disputed rugs that remained in inventory. In response, defendants' counsel supplied, first, a letter stating "there are more rugs in inventory than we initially thought," and listing eight rugs, and shortly thereafter, "Further Amended Answers to Plaintiff's First Set of Interrogatories," now listing nine rugs in inventory – a fourth and fifth version of the answer to this interrogatory. Neither response provided photographs or identified the designs of these eight, or nine, rugs.

It was to resolve all these discrepancies, and learn what designs were in fact in defendants' inventory, that we had gone to the warehouse in July and photographed the rugs that defendants produced as being all that there were in inventory. Because defendants now assert that "there are more rugs in inventory than we initially thought," plaintiff should have the opportunity to photograph the additional rugs. The simplest way to arrange that is to have defendants take photographs of the rugs and provide them. In the alternative, plaintiff is prepared once again to visit the warehouse and take the photographs, but because defendants should have made a proper production back at the time of the July inspection, we ask that defendants be assessed the cost of our doing so.

Defendants' Statement

Plaintiff continues to doggedly insist that defendants provide him with "design numbers." There are no S&H design numbers, as we have repeatedly advised Mr. Meister and as our client has testified. Each item entered into S&H's inventory is given an SH number, which is a sequential inventory number. S&H has never recorded the design numbers used by the trading companies, much less the design numbers used by its competitors. Nonetheless, Mr. Meister continues to insist that they be produced in an attempt to mislead the court. We have provided Mr. Meister, quite literally, with all the information that is available.

28616/002/1207466.1

**Cowan, Liebowitz & Latman, P.C.**

Hon. Michael A. Shipp, U.S.M.J.
November 24, 2010
Page 7

      The request states "Identify, by number and size, the S&H Rugs that Defendants have in inventory as of the date of your response. Mr. Meister requested that the inventory be updated and it was.

     5.    <u>Defendant Wilbush's Deposition</u>

<u>Plaintiff's Position.</u>

      The Court on November 11 reiterated that "Mr. Wilbush shall be made available for deposition if necessary." Plaintiff on November 18 requested that Mr. Wilbush appear for that deposition on November 30. While defendants have acknowledged their obligation to produce him, as of this writing they have said only that "We will discuss the date of the second Wilbush deposition this week." Presumably, this scheduling issue will be resolved before the December 1 conference.

<u>Defendant's Position</u>

      At the time that it was discovered that documents had been inadvertently omitted from one of our productions prior to Mr. Wilbush's deposition, we agreed that he would be produced to allow him to be questioned about those documents. That position has not changed.

                                Very respectfully,

                                /s/ *Ronald W. Meister*

                                Ronald W. Meister
                                Attorney for Plaintiff

                                /s/ *Jay R. McDaniel*

                                Jay R. McDaniel
                                Attorney for Defendants

cc:    Courtesy copy to court (via fax 973-645-4412)
        Jay R. McDaniel (via fax 201-845-3777)

28616/002/1207466.1