# THE MCDANIEL LAW FIRM, PC

54 MAIN STREET
HACKENSACK, NJ 07601
(201) 845-3232
(201) 845-3777 FAX

WWW.MCDLAWPC.COM

EMPIRE STATE BUILDING
350 FIFTH AVENUE, 59TH FLOOR
NEW YORK, NY 10118
(212) 514-8080
(212) 514-8282 FAX

JAY R. MCDANIEL
ADMITTED IN NJ & NY
JRMCDANIEL@MCDLAWPC.COM

PLEASE REPLY TO
NEW JERSEY OFFICE

February 15, 2011

**VIA ECF**

Hon. Stanley R. Chesler, U.S.D.J.
District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

  RE: Renaissance Carpet and Tapestries, Inc. v. S&H Rugs, Inc. et al.
     Civil Action No. 09-CV-00632 (SRC-MAS)

Dear Judge Chesler:

  We represent Defendants S&H Rugs, Inc. and Ori Wilbush in the above-referenced matter.  We write to notify the court that pursuant to Fed. R. Civ. Pro. 11, we have provided a "safe-harbor" notice to counsel for Plaintiff regarding our intention to move for sanctions in regard to Plaintiff's Motion to Preclude Testimony of Putative Expert.  Our notice to Mr. Meister is attached for the Court's convenience.

  In light of the twenty-one (21) day cure provisions under this rule, we seek to adjourn the motion hearing date from March 7, 2011 to April 4, 2011.  Thank you for your attention to this matter.

              Very Truly Yours,

              Jay R. McDaniel

CC: Ronald Meister, Esq. (*via ECF and email*)
    Ori Wilbush (*via email*)

# THE MCDANIEL LAW FIRM, PC

54 MAIN STREET
HACKENSACK, NJ 07601
(201) 845-3232
(201) 845-3777 FAX

WWW.MCDLAWPC.COM

EMPIRE STATE BUILDING
350 FIFTH AVENUE, 59TH FLOOR
NEW YORK, NY 10118
(212) 514-8080
(212) 514-8282 FAX

JAY R. MCDANIEL
ADMITTED IN NJ & NY
JRMCDANIEL@MCDLAWPC.COM

PLEASE REPLY TO
NEW JERSEY OFFICE

February 15, 2011

**VIA E-MAIL AND FACSIMILE**

Ronald W. Meister, Esq.
Cowan, Liebowitz & Latman, P.C.
1133 Avenue of the Americas
New York, NY 10036-6799

    RE: Renaissance Carpet and Tapestries, Inc., v. S&H Rugs, Inc. and Ori Wilbush
    Docket No.:  09-cv-00632-SRC-MAS

Dear Mr. Meister:

    As you are aware, we represent defendants S&H Rugs, Inc. and Ori Wilbush in the above-referenced matter.  This letter is to provide you with notice under Fed. R. Civ. Pro. 11 of our intention to seek sanctions should the pending Motion to Preclude Testimony of the Putative Expert not be amended or withdrawn.  Accordingly, this letter will begin the twenty-one (21) day cure period after which we will file a motion for sanctions.  We seek sanctions based on various misstatements of case law and misrepresentations of the factual record in the brief and your certification in support of Renaissance's Motion to Preclude Testimony of the Putative Expert.

    Renaissance misstates case law in its brief in support of this motion.  By way of example, Renaissance's argument that copyrightability is not a proper subject of expert testimony is based on a manipulation of a quote from Interplan Architects, Inc. v. C.L. Thomas, Inc., 2010 U.S. Dist. LEXIS 114306, *43 (S.D. Tex. Oct. 27, 2010).  On pages 10-11, the brief states "[Expert]'s agreement with the statement that Plaintiff's drawings were derived from Defendant[]'s designs is an improper legal opinion to the extent that [expert] attempted to offer a legal conclusion regarding a derivative work under copyright law."  The original text of this case states the lay witness's name – who the court holds in the paragraph immediately preceding this quote that the witness is not competent to testify as an expert because of a lack of credentials.  The word "expert" is

Ronald W. Meister, Esq.
February 15, 2011
Page 2 of 5

injected into your quote in place of the lay witness's name, who the court clearly states is not testifying as an expert.

As another example, Renaissance's argument that substantial similarity is not a proper subject of expert testimony, found on pages 7 to 10 of the brief, depends upon a clear misstatement of law. The brief point states that "the test for substantial similarity is the 'ordinary observer' test: namely, whether **'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'**" This quote is taken from <u>Dam Things from Denmark v. Russ Berrie & Co.</u>, 290 F.3d 548, 562 (3d Cir. 2002). The full paragraph from this case is as follows:

> Following the Second Circuit's lead in Arnstein v. Porter, 154 F.2d 464, 468-69 (2d Cir. 1946), we have further subdivided the test for substantial similarity into two considerations. First, the opinions of experts may be called upon in determining whether there is sufficient similarity between the works so as to conclude that the alleged infringer "copied" the work. Second, the fact-finder is to determine whether a "lay-observer" would believe that the copying was of protectable aspects of the copyrighted work. One court has described this test as being whether "**the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.**"

Renaissance's argument misstates the law in saying that expert testimony is inappropriate to the substantial similarity inquiry. Further, the appropriateness of expert testimony is found in the same paragraph as the quote Renaissance uses.

In addition to these two examples of misstated legal premises, the Renaissance brief and Certification of Ronald W. Meister, Esq. also include several instances misstated facts.

| **Factual Statement by Renaissance in its Brief and Certification of Ronald W. Meister, Esq.** | **Citation to the Record** |
|---|---|
| "David Castriota, a Ph.D. in classical languages and archaeology, but admittedly no expert in French rug design, French or 18th or 19th century design generally." (Pl. Brf. 6.; Meister Cert. ¶ 5; | Castriota's curriculum vitae and background section of his report state that he received his Ph.D. in art history and specializes in the complex field of design concepts. He has also lectured extensively |

Ronald W. Meister, Esq.
February 15, 2011
Page 3 of 5

| | |
|---|---|
| 8.) | on carpet design.  (Castriota Dep. 90:9-11; Castriota Expert Report pp. 1-2; Curriculum Vitae.) |
| "Prof. Castriota's own expert report states that his opinions may not be relied on for those subjects and Prof. Castriota has no expertise in those fields."  (Pl. Brf. 6; Meister Cert. ¶¶ 5-6.) | During his deposition testimony, Castriota corrected this statement, stating that the cover letter did not comprise part of his opinion.  He specifically identified the pages in the report that constitute his work.  (Castriota Dep. 400:12-402-4.) |
| "Accordingly, Prof. Castriota's opinions on copyrightability, including what designs were derived from other designs, are 'improper legal conclusion[s]…and are inadmissible."  (Pl. Brf. 12; Meister Cert. ¶ 10.) | Castriota specifically states that he has no expert opinion on any matter related to copyright law.  (Castriota Dep. 346:9-14.) |
| "Moreover, his experience 'has not involved questions about the originality of designs.'"  (Pl. Brf. 14; Meister Cert. ¶ 9.) | Although Castriota has not been involved with questions of the originality of designs in his experience at O'Toole-Ewald Art Associates, Inc., he has "had lots of training in determining the originality or artistic ideas" in his education at Columbia University.  (Castriota Dep. 150:17-21.) |
| "He conceded that he was generally unfamiliar with the Louis Phillippe rug design features at issue in this case, and had "no time to do that research." (Pl. Brf. 15; Meister Cert. ¶ 12.) | Not only did Castriota describe his familiarity with Louis Phillippe carpets, he "did not make this an analysis of Louis Phillippe designs," instead focusing on the presence of the Renaissance and S&H designs in historical sources. (Castriota Dep. 399:9-11; 299:3-11) |
| "He even admitted with regard to the period at issue that he was unfamiliar with 'one of the most famous carpets of its kind in the world.'"  (Pl. Brf. 15; Meister Cert. ¶ 12.) | Castriota admitted that prior to the research performed by an assistant he was unaware of this carpet, but would have found it quickly if he performed the research himself.  (Castriota Dep. 236:23-237:17.) |
| "The only expertise Prof. Castriota claims to bring to this dispute is 'a natural visual acuity' – in other words, good eyesight, | Castriota states "I didn't say that.  I have, I think, a natural visual acuity, which is one of the things that made me become an art |

| | |
|---|---|
| which he was unwilling even to say was superior to that of a layperson." (Pl. Brf. 16; Meister Cert. ¶ 13.) | historian. … [T]he people who train art historians winnow those out who have that natural visual acuity has also been trained and honed. … If you're asking me whether or not my ability to recognize visual patterns and correlations is superior to that of the average person on the street, I would guess yes."  (Castriota Dep. 162:20-163:15.) |
| "The report…includes a cover letter to defendants' counsel that describes its content, purpose, and reliability.  That letter makes clear that the sole purpose of the report is to value the carpets at issue, *and not to provide any other opinion*." (Pl. Brf. 17; Meister Cert. ¶ 14.) | Again, during his deposition testimony, Castriota corrected this statement, stating that the cover letter did not comprise part of his opinion.  (Castriota Dep. 400:12-402-4.) |
| "Even Prof. Castriota does not know what materials the researcher reviewed, or where any images he relied on came from, because, Prof. Castriota testified, 'That was not my job.'" (Pl. Brf. 20; Meister Cert. ¶ 15.) | Castriota's expert report specifically states from which auction catalogs, scholarly works, and museum pieces the images of historical rugs were taken.  (Castriota Expert Report pp. 3, 10, 20, 22, 28, 33, 38.) |
| "In fact, he himself described the images he worked from as 'crummy,' 'lousy,' and 'disgraceful' – in sum, of 'very, very poor quality' that 'make[s] it difficult to see the details.'" (Pl. Brf. 21; Meister Cert. ¶ 16.) | Castriota clearly states at his deposition testimony that, although he would have liked the images to be better, they were adequate to allow him to complete his report.  (Castriota Dep. 61:18-62:17.) |
| "Indeed, Prof. Castriota further undermined the reliability of his opinions on several occasions by testifying that 'I was under the influence of a lawyer,' that he revised his opinion based on what a lawyer told him, and the he used language a lawyer 'instructed [me] to use.'" (Pl. Brf. 36; Meister Cert. ¶ 20.) | These statements allege that lawyers from The McDaniel Law Firm, PC influenced the language used in Castriota's report. Castriota, however, states that he was not directed to include any specific language by counsel for defendants.  The "lawyer" referred to is a lawyer in another case. (Castriota Dep. 322:10-14; 343:20-24.) |

We consider these misstatements to be serious attempts to mislead the judge to grant Renaissance's motion.  In light of the twenty-one day notice to cure provision as contemplated by Fed. R. Civ. Pro. 11, we believe it is necessary to adjourn Renaissance's

Ronald W. Meister, Esq.
February 15, 2011
Page 5 of 5

Motion to Preclude Expert Testimony to April 4, 2011.  This will allow sufficient time for Renaissance to correct these arguments and for our response.  We are amenable to submitting our opposition papers by March 14, 2011 to allow an extra week for reply papers.  Thank you for your attention to this matter.

                                      Very Truly Yours,

                                      **Jay R. McDaniel**

CC:    Ori Wilbush (e-mail)