**THE MCDANIEL LAW FIRM, P.C.**
54 Main Street
Hackensack, New Jersey 07601
201-845-3232
201-845-3777 (Facsimile)
*Attorneys for Defendants S&H Rugs, Inc.*
*and Ori Wilbush*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RENAISSANCE CARPET & TAPESTRIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> S&H RUGS, INC. AND ORI WILBUSH, <br><br> Defendants. | No. 09-CV-00632-SRC-MAS <br><br> **MOTION FOR LEAVE TO SUPPLEMENT THE EXPERT REPORT OF DR. DAVID CASTRIOTA** |

Defendants S&H Rugs, Inc. and Ori Wilbush hereby respectfully move before this Court for leave to supplement the expert report of Dr. David Castriota ("Dr. Castriota"). Defendants bring this motion to include an analysis of an additional antique piece discovered in a January 2011 Brunk Auction catalog identical to one of the disputed carpet designs in this case to Dr. Castriota's expert report. (Declaration of Jay R. McDaniel, Esq., March 17, 2011, ¶¶ 2-3, Ex. A & B.)  Defendants unsuccessfully sought consent from counsel for Renaissance to supplement the expert report. (McDaniel Decl. Ex. C.)  This newly-discovered evidence is also relevant to a motion to preclude expert testimony now pending before this Court.  This Court should grant leave to Defendants to supplement Dr. Castriota's expert report.

## **STATEMENT OF FACTS**

Plaintiff Renaissance Carpet & Tapestries, Inc. ("Renaissance") is a New York City importer, distributor and retailer of hand-made carpets manufactured overseas. The carpets at issue in this case are manufactured by an affiliated company in China. Defendant S&H Rugs, Inc.[1] is an importer, retailer, and distributor of hand-made carpets purchased from a trading company in China. All of the carpets in this case are in the historic French Aubusson or Savonnerie style. Renaissance alleges Defendants infringed on copyrights it holds on sixteen (16) of its designs as a result of Defendants importing and selling similar carpets in the United States. Defendants claim, among other defenses, that both the Renaissance and S&H designs are derived from prior common historical sources and that the Renaissance copyrights are invalid, as the designs were themselves copied from historical sources.

Defendants will offer the testimony of Dr. Castriota, an art professor and historian specializing in the decorative arts (including carpets), to express an opinion on two essential points. First, it is Dr. Castriota's opinion that the designs for which Renaissance claims copyrights are not originals, *i.e.,* that the designs are themselves copied from historic works. Second, it is Dr. Castriota's opinion that the extensive similarities that exist between the Renaissance rugs and the S&H rugs are the result of the designers' use of a common historic source and thus, to the extent that Renaissance relies on common design elements shared by the rugs to prove copying, it is not reasonable to exclude the possibility of a common source from which both the Renaissance and S&H rugs are derived. (McDaniel Decl. Ex. A.)

Defendants assigned Dr. Castriota the task of conducting a comparative analysis of certain disputed carpet designs owned and sold by both Renaissance and Defendants. In his

---

[1]  Defendant Ori Wilbush is the sole shareholder of S&H, who selects the carpets for purchase.

2

report, Dr. Castriota engaged in a detailed analysis of each disputed carpet design. Based on this extrinsic analysis, Dr. Castriota opined that the Renaissance designs originated from a common source as the rugs imported by S&H. One aspect of Castriota's approach in developing his opinion that the Renaissance and S&H designs derive from prior common historic sources is the identification of such carpet designs in auctioned carpets at established, well known public auctions or on display as museum exhibits. This method confirms in significant respects Dr. Castriota's hypothesis of a common source by identifying an existing antique carpet with the same design in the public domain that pre-dates Renaissance's carpet design. (McDaniel Decl. Ex. A.)

Defendants first served Dr. Castriota's expert report on Renaissance on or about September 30, 2010. Shortly thereafter, on October 4, 2010, Defendants served an amendment to Dr. Castriota's report to include a historical carpet discovered after the report was originally completed. When Defendants submitted their amended expert report, Dr. Castriota had included a detailed finding of all carpet designs that he, using a research assistant, could identify in the limited time available as existing before publication of the Renaissance designs. Dr. Castriota opined:

> Art historical research takes time, and legal proceedings, however slow, nonetheless grind on at a steady and established pace with deadlines that cannot be extended. But, since this report was first written, several more antique examples continued to come to light demonstrating again and again that the Renaissance Carpets had copied rather than invented or created their designs. So given the demonstrable track record of Renaissance Carpets for claiming creative authorship for antique designs that they did not in reality create, the writer is confident that given enough time it would eventually be possible, even likely, to find such antique models.
>
> (McDaniel Decl. Ex. A., p. 46.)

Dr. Castriota's opinion was proven accurate when, since the date of his amended report, an additional antique carpet bearing an identical design as one of the designs at issue in this case was discovered as being recently auctioned at Brunk Auctions on January 8-9, 2011.  Defendant now seeks leave of Court to supplemental Dr. Castriota's expert report to include an analysis of this additional antique carpet prepared by Dr. Castriota after the information became available.  The only new information added to Dr. Castriota's report is the comparative analysis of the newly discovered antique carpet design as it relates to Exhibit 13 of the Complaint, an updated discussion section of the Renaissance, S&H, and Brunk Auction pieces, and a slight amendment to the overall discussion section – moving the mention of Exhibit 13 to the section regarding designs definitively copied from antique pieces.  This report fully incorporates Dr. Castriota's prior report and in no way alters or amends his approach, style, or opinion in ascertaining whether the disputed carpet designs derive from prior common historic sources.   (McDaniel Decl. Ex. A & B.)

## LEGAL ARGUMENT

**I.     Defendants' inability to include the Brunk Auction piece in Dr. Castriota's expert report is substantially justified.**

Just as Dr. Castriota's predicted, an additional antique carpet identical to a disputed design at issue in this case went to auction several months after his report was served on Renaissance.  Under the Federal Rules of Civil Procedure, an expert witness must provide the Court with a written report containing "a complete statement of all opinions to be expressed and the bases and reasons therefore; [and] the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions."  Fed. R. Civ. P. 26(a)(2).  Failure to do so may result in the exclusion of such expert opinions not properly disclosed, unless the failure was harmless or substantially justified.  See Fed. R. Civ. P.

37(c)(1); Newman v. GHS Osteopathic Inc., 60 F.3d 153, 156 (3d Cir. 1995) (the decision to exclude an expert report for failure to comply with Rule 26 is within the discretion of the trial court).

The "exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." Meyers v. Pennypack Woods Home Ownership Association 559 F.2d 894, 905 (3d Cir. 1977) (quoting Dudley v. South Jersey Metal, Inc., 555 F.2d 96, at 99 (3d Cir. 1977)). Rule 26(a)(2)(D) requires that these expert reports be disclosed at least 90 days prior to trial, or as otherwise directed by the Court. Rule 26(e)(1) provides an exception to the deadlines provided in Rule 26(a)(2), requiring that an expert witness supplement his report if he "learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1).

Defendants' inability to include the Brunk Auction antique carpet was substantially justified, as the piece was not published in the public domain until well after the close of expert discovery. Defendants in no way sought to disregard the Court's scheduling orders or withhold evidence, as the limitations of searching the public domain for examples of antique carpets is limited by publication through auction houses, scholarly works, and museum exhibits. Dr. Castriota discovered the information he disclosed in his expert report was incomplete, as it was revealed that an antique carpet bearing the same design as one of the disputed carpets was recently auctioned at the Brunk Auction in North Carolina. Because this original antique carpet design was unknown prior to the Brunk Auction in January 2011, Dr. Castriota had no way of including it in the expert report prior to the close of expert discovery. The supplement neither

5

changes Dr. Castriota's analytical technique in comparing the disputed designs nor his ultimate opinion that the disputed designs derive from prior common historic sources.

## II.     Renaissance is not prejudiced by Defendants' supplement to Dr. Castriota's expert report.

Considering Dr. Castriota's opinion that, given more time for research, identical antique pieces could be located for each of the sixteen (16) disputed designs in this case, and that no trial date has been set for this case, Renaissance will suffer no prejudice from this Court allowing Defendants to supplement the expert report. The Third Circuit, in Meyers v. Pennypack Woods Home Ownership Association, set forth four factors that a court should consider when exercising its discretion in either allowing or excluding evidence a party submits that is contrary to the court's scheduling order or the rules of procedure:  (1) the prejudice or surprise to the party against whom the testimony is being offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.  559 F.2d 894, 905; see also Fitz, Inc. v. Ralph Wilson Plastics Co., 184 F.R.D. 532, 536 (D.N.J. 1999) (in order to exclude expert testimony, the opposing party must be prejudiced); ABB Air Preheater Inc. v. Regenerative Environmental Equipment Co., 167 F.R.D. 668, 671-672 (D.N.J. 1996) (exclusion of evidence is a severe sanction and is therefore often inappropriate unless the failure to disclose or supplement is in bad faith or the resultant prejudice to the opposing party cannot be cured).  Given the absence of bad faith by Defendants and prejudice to Renaissance, Defendants should be permitted to supplement Dr. Castriota's expert report.

Under the first Meyers factor, Renaissance is not prejudiced and cannot be surprised by the inclusion of Dr. Castriota's additional antique carpet analysis. The supplement only serves as an addition to the amended report and does not change Dr. Castriota's ultimate opinion on the

6

issue of prior common historic source.  The Brunk Auction piece offers an additional antique carpet design to the host of other antique carpet designs from other sources already included in the expert report shown to be identical to the designs at issue in this case.  Including a new carpet design into his expert report does not unduly harm Renaissance or present an undue delay, but rather only serves to further support Dr. Castriota's opinion that the disputed carpet designs are derived from prior common historic sources.  No new analytical techniques have been introduced that could possibly surprise or inconvenience Renaissance in preparation for trial.

Renaissance cannot claim that it is surprised by this late inclusion given that Dr. Castriota disclosed in his report that additional antique pieces would be discovered given additional time to search the public domain.   Renaissance was also well aware that Defendants would seek to supplement the expert report with this additional piece.  First, Defendants stated that it would seek to supplement the expert report in opposing Renaissance's motion to preclude expert testimony.  Additionally, Defendants sought Renaissance's consent before making this motion.

As for Renaissance's ability to cure any prejudice under the second Meyers factor, should the Court find such prejudice, Defendants will make Dr. Castriota available for deposition on the limited issue of this additional auction piece.  Renaissance will be able to obtain any needed information from Dr. Castriota through additional deposition testimony.

Allowing Defendants to supplement Dr. Castriota's report will not, under the third Meyers factor, cause any disruption in the trial of this case.  As noted above, Castriota's supplemental report is extremely narrow and only pertains to one disputed carpet design out of sixteen (16).  The inclusion of this supplemental report will not lengthen the trial of this case.

Finally, Defendants do not bring this supplement to Dr. Castriota's report in bad faith, satisfying the fourth Meyers factor.  Most of the antique carpet designs analyzed by Dr. Castriota

are included in public auctions such as Brunk. These auctions publish catalogs with photographs and detailed information regarding the prized antique pieces. When an antique carpet bearing the same design as a disputed carpet in the instant matter is displayed in a catalog, such information is evidence of the existence of a carpet design in the public domain predating publication of the Renaissance designs. Because the Brunk auction that is the subject of this motion occurred in January 2011, Defendants had no means of identifying this antique piece prior to the close of expert discovery, as the piece was privately owned.[2] Therefore, Defendants did not act in bad faith in seeking to supplement Dr. Castriota's report with this newly-discovered antique carpet design.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant Defendants Motion for Leave to Supplement Dr. Castriota's expert report.

DATED: March 17, 2011

THE MCDANIEL LAW FIRM, P.C.

By: *[signature: Jay McDaniel]*
Jay R. McDaniel, Esq.
*Attorneys for Defendants S&H Rugs, Inc. and Ori Wilbush*

---

[2] It is worthy of note that Renaissance produced no studies or collateral materials to support its claim of original authorship, although the designer admitted that he owned an extensive library of historical rugs and designs, and that he habitually referred to these materials in preparing designs sold to Renaissance.

8