**THE MCDANIEL LAW FIRM, P.C.**
54 Main Street
Hackensack, New Jersey 07601
201-845-3232
201-845-3777 (Facsimile)
*Attorneys for Defendants S&H Rugs, Inc.*
*and Ori Wilbush*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| RENAISSANCE CARPET AND TAPESTRIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> S&H RUGS, INC. and ORI WILBUSH, <br><br> Defendants. | No. 09-CV-00632-SRC-MAS <br><br><br> **DECLARATION OF ORI WILBUSH** |

I, **ORI WILBUSH**, declare, under penalty of perjury, as follows:

 1. I am a defendant in the above-captioned matter. I am the sole shareholder of S&H Rugs, Inc. (S&H), another defendant in this case. I make this Declaration in support of Defendants' Opposition to the Motion for Sanctions for Spoliation of Evidence submitted by plaintiff Renaissance Carpet and Tapestries, Inc. ('Renaissance').

 2. In 1989, I emigrated from Israel to the United States and English is not my first language. I established S&H in 1995 and have been importing and selling carpets since that time. The plaintiff in this case is well-known to me as a more powerful competitor.

 3. I was served with Renaissance's Complaint in this case in or about February 2009. My initial response was to try to resolve this dispute because of the cost of litigation and the small amount of sales that were actually in dispute. I provided Renaissance with the information

1

necessary to identify the disputed designs and the number, models and styles of Aubussons and Savonneries imported by S&H from China.

4. The documents that I provided to them included the manifests from the importation of each and every design that is presently at issue in this case. I also provided photographs of each and every design that Renaissance requested and claimed was its own property. Renaissance reviewed those documents and made a settlement demand. While I rejected the settlement demand, there was never any question that Renaissance had not, or could not, identify the specific items that were imported and sold.

5. After I supplied Renaissance with this information, the amended complaint was filed, adding additional designs to the dispute. I would also note that every design has been published on our websites and that Renaissance has apparently been monitoring our sales since 2006.

6. The claim of Renaissance's attorney that we have destroyed or deleted documents is not true. We have not deleted any e-mails since the time that this lawsuit was filed and have produced e-mails from 2008 forward. Similarly, we have not disposed of any sales records since before this case began. While we previously would clean out files on an annual basis (including deleting old e-mails), we obviously stopped these practices once this lawsuit was filed. I told Mr. Meister that no e-mails or documents had been deleted or destroyed after this case was filed during my deposition. His affidavit ignores that testimony.

7. As a regular part of S&H's business, I had historically deleted emails received in our two business email accounts so that I keep only a year's worth of emails. The last time I deleted such emails was in 2008, well before this case was filed, deleting emails from 2007 and prior. During the course of this lawsuit, we have discontinued this practice and have maintained all of the e-mails intact.

8. S&H's record keeping practices for sales receipts and invoices is informal but has always been sufficient for our purposes. When a customer comes to my showroom or contacts us by telephone and orders a carpet, I or another salesperson will write the inventory number, price, shipping amount, and customer information on a piece of paper. This process simply allows me to complete the customer's order later. I store these papers in boxes at S&H. I usually clean out my files each year, but again we stopped that process when the lawsuit began. I have turned over to my attorneys all paper sales receipts and orders that S&H has created from 2006 to 2010.

9. I do not use the paper sales receipts or orders to track the items in inventory or the amount of sales. I also do not keep track of this information through any computer programs. S&H is on a cash accounting system and we only keep track of the total amounts deposited in our bank account.

10. I provided to Renaissance before their lawsuit began packing lists that are included in the deliveries of carpet imports from trading companies in China from whom I order inventory. I provided these lists in hopes that a settlement could be reached before the lawsuit began. I highlighted the carpets I imported that had designs that Renaissance said were theirs. These packing lists include information about how much the carpets cost and how many square feet each carpet is.

11. We have never used a centralized inventory system. In order to advertise the carpets for sale, either I or someone from my staff will ordinarily take 5 or 6 pictures of each carpet in the order that they come in the bales from the trading companies. Each carpet is given an individual inventory number, ranging from SH0001 to SH9999. Once we reach SH9999, we begin to reassign previously allocated inventory starting back at SH0001 and work our way up, reassigning those numbers as we go. This system also is used in publishing photos of our

products on the Internet.  We have in the past turned over the inventory numbers every three or four years.

12. Approximately every three to four years, our entire list of inventory numbers will have been reused.  The last time that we reached 10,000 and started the numbering system new was in approximately 2007.  In late 2010, my attorney collected all of the e-mails on my computer and made a copy of the hard drive on which the photographs of the rugs are kept.  These 56,000 photos cover a period from at least March 2007 to the date on which they were produced.

13. Sometime during the summer of 2010, counsel for Renaissance came to the S&H showroom to photograph the rugs that remained in inventory that had disputed designs.  I laid out all the carpets in inventory.  There were nine were left as I stopped selling these carpets after the lawsuit began.  I noticed that counsel for Renaissance only photographed about three carpets.  I do not know why they did not photograph them all.  My lawyer later requested that I put out the carpets to be photographed and I did so.

14. The assertion that I have intentionally deleted any documents is not true.  I have not deleted any e-mails since this case began.  I have not destroyed any documents since this case began.  I have not been evasive or attempted to thwart discovery in any respect and, in fact, we have produced some 65,000 documents and reviewed approximately 100,000 documents in the course of this lawsuit.

I declare under penalty of perjury that the foregoing is true and correct

DATED: March 31, 2011

By: _____
Ori Wilbush