COWAN, LIEBOWITZ & LATMAN, P.C.
1133 Avenue of the Americas
New York, NY 10036
(212) 790-9200
Clarence J. Erickson (cje@cll.com)
Ronald W. Meister (rwm@cll.com)
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------x

RENAISSANCE CARPET AND TAPESTRIES, : No. 09-CV-00632-SRC-MAS
INC.,
                                    :
               Plaintiff,           : ELECTRONICALLY FILED
                                    :
         -against-                  : Motion Day: April 18, 2011
                                    :
S&H RUGS, INC. and ORI WILBUSH,     :
                                    :
               Defendants.
------------------------------------------------------------x

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT
OF MOTION FOR SPOLIATION SANCTIONS**

On the brief:

    Ronald W. Meister
    Thomas Kjellberg

1232867.1

# CONTENTS

|  |  | Page |
|---|---|---|
|  | Preliminary Statement | 1 |
| 1. | Defendants Failed To Preserve Evidence, And Continued To Destroy Evidence Throughout This Litigation, Even In The Face Of Instructions Defense Counsel Swears Were Given. | 1 |
| 2. | Defendants' Spoliation Of Evidence Has Prejudiced Plaintiff. | 5 |
| 3. | Defendants' Spoliation Of Evidence Was Knowing And Willful; Direct Evidence Of Malice Is Not Required. | 9 |
| 4. | Mr. Wilbush's Multiple Invocations Of The Fifth Amendment Support The Presumptions. | 11 |
| 5. | The Affidavit On This Motion Is Proper. | 12 |
| 6. | Defendants' Standing Argument Is Irrelevant To This Motion And Wrong As A Matter of Law. | 13 |
| 7. | Plaintiff Is Entitled To Monetary Sanctions. | 14 |
|  | Conclusion | 15 |

# AUTHORITIES CITED

Page(s)

**CASES**

*A. Brod Inc. v. SK&I Co. LLC*,
998 F. Supp. 314 (S.D.N.Y. 1998) ................................................................. 14

*Basketball Mktg. Co. v. Steve & Barry's Univ. Sportswear*,
2008 U.S. Dist. LEXIS 107249 (E.D. Pa. June 30, 2008) ................................. 13

*Canton v. Kmart Corp.*,
2009 U.S. Dist. LEXIS 59352 (D.V.I. July 10, 2009) ...................................... 10

*Dowling v. U.S. Gov't*,
2008 U.S. Dist. LEXIS 79862 (D.V.I. Oct. 6, 2008), *reconsideration denied*, 2008 U.S. Dist. LEXIS 95455 (D.V.I. Nov. 20, 2008) .......................... 10

*Eden Toys Inc. v. Floralee Undergarment Co.*,
697 F.2d 27 (2d Cir. 1982) ............................................................................. 14

*Fowler v. Borough of Westville*,
97 F. Supp.2d 602 (D.N.J. 2000) ..................................................................... 13

*Jimenez v. All American Rathskeller*,
503 F.3d 247 (3d Cir. 2007) ............................................................................. 3

*Merrill Lynch Bus. Fin. Servs. v. Kupperman*,
2007 U.S. Dist. LEXIS 78880 (D.N.J. Oct. 23, 2007) ...................................... 11

*MOSAID Techs., Inc. v. Samsung Elects. Co.*,
348 F.Supp. 2d 332 (D.N.J. 2004) ........................................................... 5, 9, 11

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
306 F.3d 99 (2d Cir. 2002) ............................................................................... 8

*S.E.C. v. Graystone Nash, Inc.*,
25 F.3d 187 (3d Cir. 1994) .............................................................................. 11

*Travelers Prop. Cas. Co. of Am. v. Cooper Crouse-Hinds, LLC*,
2007 U.S. Dist. LEXIS 64572 (E.D. Pa. Aug. 31, 2007) .................................. 10

1232867.1

*U.S. v. Suarez,*
  2010 U.S. Dist. LEXIS 112097 (D.N.J. Oct. 19, 2010) .................................................. 10

**STATUTES**

17 U.S.C. §204 ................................................................................................................. 13, 14

17 U.S.C. § 501(b) ................................................................................................................. 14

1232867.1

## Preliminary Statement

Employing a belligerent tone surprising for a litigant that continued to destroy evidence as this case was underway, and whose principal refused to answer questions at both sessions of his deposition out of fear of self-incrimination, defendants ignore their own testimony of document destruction, argue unconvincingly that the missing evidence is unimportant, and skip entirely over plaintiff's discussion of the prejudice caused by their actions.

Defendant Wilbush testified without qualification that "we didn't change anything" in defendants' practices of regularly destroying documents after this lawsuit began. Counsel now swears that he advised Mr. Wilbush with care of his obligation to preserve materials. That advice, if given, was disobeyed, confirming that the continued destruction of evidence was knowing and willful. Because major categories of evidence were as a result placed beyond the reach of plaintiff and of this Court, plaintiff seeks the remedies for spoliation to which it is entitled by law.

1. **Defendants Failed To Preserve Evidence, And Continued To Destroy Evidence Throughout This Litigation, Even In The Face Of Instructions Defense Counsel Swears Were Given.**

Defendant Wilbush's deposition testimony that he failed to preserve documents after this action began could scarcely have been clearer:

1232867.1

(1)  As to e-mails: "Usually I keep one year." (Wilbush Dep. 123-24). "Q. You don't keep in your system e-mails from two and three and four years ago? A. No." (*Id.*) Defendants apparently also deleted "big e-mails with JPEGS, like large images," which contained images of particular importance to this case. (*Id.*, 124) The destroyed e-mails, Mr. Wilbush acknowledged, are "gone forever." (*Id.*, 305)[1]

(2)  As to invoices: "[W]e clean out our files every year." (*Id.*, 253)

(3)  As to images of rugs: defendants delete images "every day, every other day. Whenever we have a chance." (*Id.*, 245) The last time was "maybe a week ago." (*Id.*)

(4)  As to Customs records, documents from defendants' Customs broker showed that their production was incomplete. In addition, Mr. Wilbush testified about recent shipments for which no import records exist from any source. (Meister Aff. ¶37, Wilbush Dep. 348-49). When questioned about the incomplete records that he did retain, Mr. Wilbush invoked the Fifth Amendment. (Wilbush Dep. 83, 85, 86, 89, 228)

(5)  As to the rugs themselves, defendants sold off the last examples of several disputed designs after this action began, so what was left at defendants' warehouse when we finally obtained access to it (over defendants' objection) were

---

[1] Defendants' contention that "responsive e-mails produced in this case go back to 2007" (Def. Mem. 10) is incorrect. Pl. Mem. 8, fn. 7

2

only three designs, not the nine designs that defendants' interrogatory answers swore were available then. (Meister Aff. ¶39; McDaniel Aff., Ex. D, Response 15, p. 3)

Mr. Wilbush's deposition testimony gives the lie to his current declaration that he changed his document destruction practices after the commencement of litigation. His about-face, now that he has left the deposition room and is confronted with this motion, is entitled to little weight. *Jimenez v. All American Rathskeller*, 503 F.3d 247, 254 (3d Cir. 2007) (deposition testimony more reliable because subject to cross-examination; subsequent contradictory affidavits may be disregarded). His belated attempt to change the record extends even to describing S&H's invoices, a topic as to which he refused to testify at his deposition, repeatedly pleading the Fifth Amendment. (Wilbush Dep. 255-63)[2]

---

[2] Examples of Mr. Wilbush's invocation of the Fifth Amendment are:
  Q. Mr. Wilbush, do you see the figure $2,450 on this page, 1035?
  MR. McDANIEL: The question was does he see it? You may answer that question.
  A. Yes.
  Q. Is that the amount of money that this customer paid for this purchase?
  MR. McDANIEL: I am instructing the witness not to answer that question, again, on the basis of potential Fifth Amendment issues.
  Q. Did you sell five bales of rugs to this customer reflected on this exhibit?
  MR. McDANIEL: I will instruct the witness not to answer that question.

*(Footnote continues on next page)*

In any event, defendants' claim of belated conscientiousness relates only to e-mails and invoices — not to the images, Customs records or rugs themselves that defendants continued to dispose of — and it is unavailing even as to them.  As to the e-mails, Mr. Wilbush's new story makes no sense, because (by his testimony, at Wilbush Dep. 123-24) his system required him to delete everything exceeding a year's memory.  That memory capacity remained unchanged until at least June 2010, fifteen months after the commencement of litigation, when by Mr. Wilbush's testimony it would have been at approximately 225% of capacity.[3]

---

Q. Did you sell fourteen pieces of assorted oriental rugs to this customer as reflected on the exhibit?
MR. McDANIEL: I am going to instruct the witness not to answer the question.
...
Q. Did this word "original" on this little scroll logo appear on your form as the form was printed?
MR. McDANIEL: I would instruct the witness not to answer that question.
Q. Can you explain to me why that word "original" and the scroll image appears on page SH 1035 and doesn't appear on page SH 683?
MR. McDANIEL: Instruct the witness not to answer the question.
Q. Would you explain to me, Mr. Wilbush, why these various invoices and receipts that you produced are in different formats?
MR. McDANIEL: Hold on.  I instruct the witness not to answer that question.
(Wilbush Dep. 260, 262)

[3] Defendants claim that plaintiff ignores "Mr. Wilbush's testimony that he last cleaned out his e-mail accounts in 2008."  To the contrary, he conceded that "e-mails with images of rugs that you purchased more than a year ago would no longer be available to us" (Wilbush Dep. 123-24), and that defendants "don't retain in [their] system e-mails from two and three and four years ago." (*Id.*)  Thus, the e-mails from the very period when most of the disputed rugs were manufactured and imported have been destroyed.  Oddly, as authority for their contention that Mr. Wilbush destroyed no documents after this case was commenced (Def. Mem. 6),

4

As to the invoices, which Mr. Wilbush testified were "cleaned out" every year, whatever was left was of little use, because Mr. Wilbush repeatedly pleaded the Fifth Amendment when asked about them. (*Id.,* 82-83, 255-60, 262-63).

As a result of defendants' improper actions, major categories of evidence are missing. In light of counsel's declaration that defendants were on notice of their obligation to preserve that evidence, their failure to do so was knowing and willful. *MOSAID Techs., Inc. v. Samsung Elects. Co.,* 348 F.Supp. 2d 332, 338 (D.N.J. 2004).

### 2. Defendants' Spoliation Of Evidence Has Prejudiced Plaintiff.

It is hard to understand defendants' argument that plaintiff did not "articulate the prejudice" caused by defendants' actions (Def. Mem. 15) or describe how it "affects [plaintiff's] case" (Def. Mem. 18). Plaintiff in fact devotes one section of its memorandum (pp. 18-22) to the relevance of the missing evidence, and another (pp. 25-27) to prejudice. To summarize them, defendants' spoliation of evidence prejudices plaintiff in several critical ways:

(1) <u>How many rugs of each design did defendants import?</u> We don't know, because defendants produced records that were proven to be incomplete, and as to which Mr. Wilbush invoked the Fifth Amendment. While we have obtained some additional records from a Customs broker, we know that there were

---

defendants cite plaintiff's affidavit on this motion (¶¶ 8-13), which recites Mr. Wilbush's testimony saying the exact opposite.

additional imports for which there are no Customs records at all.[4] Packing lists included with some Customs documents are of limited value, because Mr. Wilbush maintained that he was able to recall the designs numbers of only two of the sixteen designs, and was thus unable to identify most of the carpets that defendants imported. *Because of this prejudice, it is appropriate to grant the requested presumption that defendants derived substantial profits from the importation and sale of rugs in all sixteen designs.*

(2) <u>What rugs did defendants sell?</u> Defendants at first denied having <u>any</u> records of individual sales. When that proved false, even defendants' incomplete production of sales records was of very limited value, because (as defendants' admit in their motion papers) only some of the invoices contain "SH" inventory numbers, and very few show design numbers. When plaintiff attempted to question Mr. Wilbush about the invoices defendants did produce, he again pleaded the Fifth Amendment. *This prejudice further supports the requested presumption.*[5]

---

[4] Defendants' contention that "there is no allegation that [the broker's records] are incomplete" is wrong, plaintiff having described in its motion papers later importations for which there is no record (Meister Aff. ¶ 37 and n.20). Moreover, defendants' argument that "Mr. Wilbush was examined extensively about their contents" neatly omits stating that, while he was "examined" on these records, he refused to answer many questions about them for fear of self-incrimination. (Wilbush Dep. 72-73, 85-86, 88-89, 228, 284-85).

[5] After arguing, improbably, that proof of actual damages is a "waste" (Def. Mem. 9 n. 6), defendants proceed to make their own calculation of damages from the incomplete evidence they provided. Because of the combination of lost evidence and refusals to answer, we don't know whether defendants' figures for

(3) <u>What were the designs of the rugs defendants sold?</u> Defendants continually deleted images of the rugs "every day, every other day" as this lawsuit proceeded (Wilbush Dep. 245), replacing the images of the rugs they sold with images of rugs newly imported. As Mr. Wilbush concedes, without images of the rugs at issue, "you have no way of knowing what the specific designs were." (*Id.* 45).[6] *Because of this prejudice, it is appropriate to grant the requested presumption that defendants' rugs are substantially similar to plaintiff's rugs.*

(4) <u>What do the rugs themselves look like?</u> Only a few remain to be examined by the jury, because defendants continued to sell them off as this lawsuit progressed, though they lied about doing so.[7] *This prejudice, too, supports the*

---

importation and sales are anywhere near correct. Indeed, because Mr. Wilbush testified that he could not identify the number of imported rugs with designs at issue in this case (because he claimed to remember only two of the sixteen design numbers), we <u>know</u> that defendants' figures are grossly understated.

Defendants' assertion that they can deprive plaintiff of evidence of actual damages is unsound, because it is plaintiff's option to seek actual or statutory damages. Even if plaintiff chooses to elect statutory damages, plaintiff is entitled to evidence showing the relation such damages bear to actual damages.

[6] While defendants seek to make much of the large number of images they belatedly provided, those images are a vast document dump of little value, because (1) many, and probably most, of the images of rugs sold in the relevant period had been deleted; (2) images can be matched to sales only when the invoices, which are themselves incomplete, contain an "SH" inventory number, which most don't; and (3) images can be matched properly only if the image corresponding to an inventory number has not been replaced.

[7] Meister Aff. ¶50; *compare* Wilbush Dep. 22-23 *with id.* 301, 347. Defendants miss the point that plaintiff should be entitled to show the trier of fact the infringing items that are the basis of this suit.

*requested presumption that defendants' rugs are substantially similar to plaintiff's rugs.*

(5) <u>What would the missing e-mails show</u>? We cannot know what missing documents say, and it is for that very reason that courts do not hold the moving party to "too strict a standard of proof regarding the likely contents of the destroyed evidence," *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002), and apply a presumption that missing evidence was unfavorable to the spoliator. *See* Pl. Mem. at 18-22. As a result of defendants' actions, plaintiff has been deprived of proof of communications with manufacturers, suppliers and customers that would normally be available to prove knowledge and willfulness. *Because of this prejudice, it is appropriate to grant the requested presumption that defendants' infringing actions were willful.*

The informality of defendants' record-keeping, on which they attempt to rely, is no excuse. Our complaint is not about records that defendants never created; it is about the many categories of evidence that they <u>did</u> have (invoices, images, e-mails and rugs) but that have gone missing – in violation, defendants' counsel contends, of his own instructions to preserve them.

8

3. **Defendants' Spoliation Of Evidence Was Knowing And Willful; Direct Evidence Of Malice Is Not Required.**

Defendants' contention that destruction of documents must be "malicious" to merit sanctions is unsupported by the case law. The elements of spoliation, described in detail in Point I of our principal brief, are all satisfied here.

*MOSAID Techs., Inc. v. Samsung Elects. Co.*, 348 F. Supp.2d 332, 335 (D.N.J. 2004), squarely addresses the issue of intent. Defendant there claimed that a showing of "fraud" and "a desire to suppress the truth" were required, and that "routine" destruction of evidence in the ordinary course of business was not subject to sanctions. *Id.* at 337. The court, citing some of the very cases relied on by the defendants here, expressly rejected that position, stating:

> Primarily, the spoliation inference serves a remedial function – leveling the playing field after a party has destroyed or withheld relevant evidence. The offending party's culpability is largely irrelevant as it cannot be denied that the opposing party has been prejudiced. Contrary to [defendant's] contention, negligent destruction of relevant evidence can be sufficient to give rise to the spoliation inference. … By allowing the spoliation inference in such circumstances, the Court protects the integrity of its proceedings and the administration of justice.

*Id.* at 338 (citations omitted). Willful blindness to the destruction of evidence, the Court held, warranted spoliation sanctions. *Id.* Subsequent decisions are in accord with this approach, and make it clear that the failure to take reasonable precautions to preserve relevant evidence is sufficient to warrant sanctions. *E.g., U.S. v.*


*Suarez*, 2010 U.S. Dist. LEXIS 112097, *26 (D.N.J. Oct. 19, 2010); *Canton v. Kmart Corp.*, 2009 U.S. Dist. LEXIS 59352, 8-9 (D.V.I. July 10, 2009); *Dowling v. U.S. Gov't*, 2008 U.S. Dist. LEXIS 79862, *5-6 (D.V.I. Oct. 6, 2008), *reconsideration denied*, 2008 U.S. Dist. LEXIS 95455 (D.V.I. Nov. 20, 2008); *Travelers Prop. Cas. Co. of Amer. v. Cooper Crouse-Hinds, LLC*, 2007 U.S. Dist. LEXIS 64572, *23-24 (E.D. Pa. Aug. 31, 2007).[8]

Much of this analysis is unnecessary, however, because by counsel's own declaration, defendants were on explicit notice of "the obligation of litigants to collect and preserve" relevant materials. McDaniel Decl. ¶31. Notwithstanding these instructions, defendants failed to halt the destruction of emails, continued to delete computer images of infringing rugs, continued to destroy invoices on a regular basis, and continued to sell off the inventory of infringing rugs. Defendants also failed to maintain Customs records, despite an obligation to do so, and pleaded the Fifth Amendment when questioned about those records and records of sales, raising a further inference that missing documents were harmful to them.

---

[8] Cases cited by defendants, many of which pre-date the more stringent spoliation standards currently in force, involved evidence that was either misplaced or accidentally destroyed by parties unaware of their obligations to preserve it, or only vague and unspecific allegations of spoliation. *See, Brewer* (evidence lost in connection with the death of the defendant's in-house attorney); *Bensel* (documents accidentally destroyed by document storage company); *Veloso* (documents "misplaced" well before the claim arose); and *Hicks* (defendants unaware of documents' relevance).

Defendants' conduct here was intentional and meets the standard set forth in *MOSAID*. There, as here, the defendant "knew it had a duty to preserve potentially discoverable evidence," "knew that e-mails were potentially relevant to this litigation" and "knew how to institute a 'litigation hold' and stop the spoliation of e-mails," but failed to do so. The Court found that such actions were intentional, and constituted "willful[] blind[ness]" that went "far beyond mere negligence, demonstrating knowing and intentional conduct that led to the nonproduction." 348 F. Supp.2d at 338.

4. **Mr. Wilbush's Multiple Invocations Of The Fifth Amendment Support The Presumptions.**

Most of defendants' discussion of the Fifth Amendment argues that Mr. Wilbush properly invoked the privilege because of his "substantial and real, not trifling or imaginary, risk of incrimination." (Def. Mem. 21) We do not dispute that a defendant genuinely in fear of criminal prosecution is entitled to invoke the Fifth Amendment; the point is rather that he may not thereby deprive an adversary of "a source of information that might conceivably be determinative in a search for truth." *Merrill Lynch Bus. Fin. Servs. v. Kupperman*, 2007 U.S. Dist. LEXIS 78880, *7-8 (D.N.J. Oct. 23, 2007), *citing S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994). The effect of that deprivation is particularly severe here, where, combined with the loss of major categories of evidence, it lends forceful support to the need for the presumptions discussed in our principal brief.

11

Defendants attempt to minimize the magnitude of Mr. Wilbush's Fifth Amendment pleas by referring only to the first session of his deposition. The full extent of Mr. Wilbush's multiple claims of self-incrimination, at both sessions, is set forth at pages 13-15 and 35 of our principal memorandum. Mr. Wilbush refused to testify about much more than his apparently fraudulent Customs documents; he refused to answer questions about invoices, sales, prices, and why he kept records in different forms and committed fraud with regard to the very rugs at issue in this case.

5.  **The Affidavit On This Motion Is Proper.**

Defendants' objections to the affidavit of Ronald Meister on this motion misrepresent its content and misapply the local rule. Facts concerning the history of discovery in this action, including plaintiff's attempt to track down missing evidence that had been destroyed, are well within the personal knowledge of the affiant who conducted the discovery at issue; defense counsel's affirmation contains the same sort of narrative of which he is critical. Statements relating to defendants' testimony are heavily footnoted to the record. It is entirely proper to summarize and collect such testimony, with appropriate references to the record.[9]

---

[9] As examples, while defendants claim that ¶9 of the affidavit contains no record citation for the (undisputed) statement that defendants' counsel never issued a litigation hold letter, immediately preceding that statement is a citation to Mr. Wilbush's deposition testimony saying so (Ex. 1, p. 306); defendants' claim that there are no citations to support statements in ¶¶10 and 11 is belied by the citations

12

The remaining statements in the affidavit consist mainly of introductory narrative or explanations of the defendants' testimony that are supported by the affiant's personal knowledge as well as by citations to the record. The affidavit does not contain any legal authority or arguments based on the law. To the extent that any statements may be argumentative, the appropriate remedy is to disregard them. *See, e.g., Fowler v. Borough of Westville*, 97 F. Supp.2d 602, 607 (D.N.J. 2000) (disregarding portions of affidavits containing speculative statements and references to hearsay rather than striking affidavits).

### 6. Defendants' Standing Argument Is Irrelevant To This Motion And Wrong As A Matter of Law.

Defendants' assertion that Renaissance lacks standing to pursue this copyright infringement claim is irrelevant on this motion for sanctions for spoliation of evidence. It is also wrong as a matter of law.

First, defendants themselves have no standing on which to invoke section 204 of the Copyright Act, because Renaissance and Mr. Hecquet do not themselves dispute Renaissance's ownership of exclusive rights in the relevant copyrights. *Basketball Mktg. Co. v. Steve & Barry's Univ. Sportswear*, 2008 U.S. Dist. LEXIS 107249 (E.D. Pa. June 30, 2008) at fn. 1, citing *Eden Toys Inc. v. Floralee*

---

to deposition testimony at the end of those very paragraphs; the statements in ¶16 are supported by the citation in ¶17; and the statement in ¶37 that "defendants evidently continued to import rugs in infringing designs, for which they provided no import documents at all" is supported by the citation at end of that paragraph. Citations in this format appear consistently throughout the affidavit.

13

*Undergarment Co.*, 697 F.2d 27 (2d Cir. 1982) ("it would be anomalous to permit a third-party infringer to invoke [§204] against the licensee"). Further, even if Renaissance were not the legal owner of the subject copyrights – which it is – Renaissance would still have standing to bring its claims as a beneficial owner of those rights. 17 U.S.C. § 501(b) ("the legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it"); *accord, A. Brod Inc. v. SK&I Co. LLC*, 998 F. Supp. 314, 325 (S.D.N.Y. 1998) ("both the equitable, or 'beneficial,' owner of a copyright and the legal owner have standing to sue for infringement").

### 7.     **Plaintiff Is Entitled To Monetary Sanctions.**

Defendants seek to dismiss in a footnote plaintiff's entitlement to compensation for the additional discovery to which it has been put and for the investigation and litigation of the spoliation itself. Plaintiff's entitlement to costs is described at pp. 38-39 of our principal brief, and the substantial additional efforts to which plaintiff has been put are detailed in the supporting affidavit at ¶¶ 54-66. Defendants' conclusory footnote (Def. Mem. 20 n.13) leaves uncontradicted the factual basis and legal support for this "mildest" component of sanctions.

1232867.1

## Conclusion

Defendants include in their papers frequent references to the adverse consequences they would suffer if sanctions are imposed. Sanctions are by their nature adverse, and where merited by a party's disregard of its affirmative obligations to preserve evidence, they are fully appropriate both to maintain the integrity of the judicial process and to remedy prejudice. For the reasons set forth herein, and in plaintiff's principal memorandum, they should be awarded in this case.

Dated: April 14, 2011

Respectfully submitted,

COWAN, LIEBOWITZ & LATMAN, P.C.

By: /s/ Ronald W. Meister
Ronald W. Meister
1133 Avenue of the Americas
New York, NY  10036
(212) 790-9200
Attorneys for Plaintiff

1232867.1