**COWAN
LIEBOWITZ
LATMAN**

Cowan, Liebowitz & Latman, P.C.
1133 Avenue of the Americas
New York, NY 10036

(212) 790-9200 Tel
(212) 575-0671 Fax
www.cll.com

Ronald W. Meister
(212) 790-9255
rwm@cll.com

June 20, 2011

**Filed Electronically**

Hon. Michael A. Shipp, U.S.M.J.
District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

    Re: Renaissance Carpet and Tapestries, Inc. v. S&H Rugs et ano.
       Civil Action No. 09 -CV- 00632 (SRC-MAS)

Dear Judge Shipp:

  This firm represents plaintiff in the above-entitled action. We write in response to defense counsel's letter regarding plaintiff's voluntary production of an agreement between plaintiff and its long-term employee, Philippe Hecquet. Defendants' complaint about this production is mistaken, and ignores the history of discovery and the many conferences held by the Court in this matter. Defendants never sought production of the document during any of those conferences, despite ample opportunities to do so when asked repeatedly whether they sought further discovery from plaintiff. Moreover, defendants' argument about the effect of the document turns the concept of standing on its head – under settled law, it is defendants who are without standing to dispute the ownership of the designs as between Renaissance and M. Hecquet.

**The History of Discovery in this Matter**

  Defendants' implication that plaintiff concealed the existence of this agreement is flatly belied by the record. Plaintiff identified Mr. Hecquet in its initial disclosures, and described his role in response to defendants' discovery requests, where we identified Renaissance as the owner of the designs and produced copies of the copyright registrations, which (contrary to defendants' statement) are the *prima facie* evidence of plaintiff's ownership.

  At their depositions, both parties to the agreement, M. Hecquet and Renaissance's principal, Mr. Andonian, testified about the contract[1]. Defendants' statement that they requested the contract at the depositions is belied by the transcript, which they decline to quote.

---

[1] *See* Hecquet Dep. 10:24-11:13; Andonian Dep. 20:12-16; 41:18-42:17; 57:3-22.

1248679.2

**Cowan, Liebowitz & Latman, P.C.**
Hon. Michael A. Shipp, U.S.M.J.
June 20, 2011
Page 2

Defendants never called for its production during either deposition. After the close of fact discovery, the Court held a lengthy series of telephone and in-person conferences, at which Your Honor devoted substantial effort to consider and resolve all outstanding discovery disputes. Defendants never asked for production of the contract at any of those many conferences.

Defendants' letter displays a highly selective memory about the history of discovery in this matter. Fact discovery in this case closed on August 30, 2010. In an October 6, 2010 letter to counsel, defendants raised the issue of the contract, among other issues, for the first time. Nevertheless, when Your Honor conducted a telephone conference on October 14, 2010 to resolve outstanding discovery disputes, defense counsel did not mention M. Hecquet or any agreement; the only document issue defendants raised was plaintiff's production of supplementary copyright registrations, which we promptly provided.

In the next joint status report, on October 29, 2010, (docket entry 53), which was designed to discuss further the issues remaining from the prior report and conferences, we reiterated what had transpired at the October 14 conference, noting, "[D]efendants mistakenly believe that this letter provides them an opportunity to ask for additional materials not sought prior to the close of fact discovery on August 30, two months ago, and to raise issues not discussed in the parties' telephone conference of October 14." Reviewing the open issues, we said, "The only item raised by defendants in that conference was plaintiff's production of supplementary copyright registrations, which plaintiff promptly provided. The Court was careful at the conclusion of the conference to ask if there remained any issues not discussed, and defendants raised none of the items contained in this 'Statement of Discovery Disputes.'"

In the next telephone status conference, on November 5, 2010, defendants <u>again</u> made no reference to any contract. At the conclusion of the conference, the Court was careful to ask again if there were any further issues, and defendants raised none. The Court's order (docket entry 55), issued that very day and dealing with all outstanding discovery issues, made no reference to any contract, because defendants had not made any complaint about it.

Yet <u>another</u> conference, this time in person, was held on November 10, to resolve any open discovery issues. Once <u>again</u>, defendants made no request for a contract at this conference. At the conclusion of the conference, the Court again asked defense counsel, "Is there anything else … from your agenda or your list?" Defendants raised two issues: their request for copies of plaintiff's catalogue, which the Court had earlier denied at a June 21, 2010 conference, and which it denied again, and a request for discovery "as to the first discovery of our clients' alleged infringement." The Court then set a further conference for December 1, 2010, noting that "that's an appropriate time to talk about anything that is still open or anything that's still unresolved." The Court was clear: "I'm going to give you up until that time to make sure that the open fact items … that are lingering, to get them resolved, but on December 1st I certainly expect that any and all issues in this matter should be closed." Transcript of Proceedings held on 11/10/10, docket entry 57.

In the November 24, 2010 joint status letter, docket entry 58, submitted in advance of the December 1 conference, defendants <u>again</u> did not list the agreement as an open issue. To the

1248679.2

**Cowan, Liebowitz & Latman, P.C.**
Hon. Michael A. Shipp, U.S.M.J.
June 20, 2011
Page 3

contrary, they "agree[d] that fact discovery is closed, except for the deposition of Mr. Wilbush as to documents that were produced after his initial deposition." At the December 1 conference, at which the Court provided yet <u>another</u> opportunity to discuss open issues, the contract again went unmentioned. The Court's December 3, 2010 Order dealt with all outstanding issues, granting plaintiff leave to file a motion with regard to defendants' spoliation of evidence; granting plaintiff leave to take a second deposition of defendant Wilbush; and ordering defendants to produce outstanding materials by December 8, 2010.

The Court thus accorded all parties multiple opportunities to raise discovery issues, and was meticulous in concluding each conference by asking if anything else remained to be discussed. Defendants knew from deposition testimony that a contract between M. Hecquet and Renaissance existed; did not request its production at the depositions; and chose on the many opportunities provided by the Court not to seek its production. Plaintiff had every reason to conclude that defendants chose not to pursue a fruitless challenge to plaintiff's ownership of the designs, which (as we will show) defendants had no standing to raise. Despite defendants' feigned outrage at production of the contract now, defendants cannot be heard to complain that it was not produced earlier.

**<u>Defendants Have No Standing To Raise The Issue Of Ownership Vis-à-Vis M. Hecquet</u>**

Defendants' attempt to make hay out of the contract is of no avail as well because the standing argument they are attempting to inject into this case lacks any merit. Under settled law, it is <u>defendants</u>, as alleged third-party infringers, who are without standing to challenge a claim by Renaissance to own the copyrights at issue by transfer from Philippe Hecquet. Defendants "'simply do[] not have standing under § 204'[2] to question plaintiff's copyright ownership where there was no dispute between parties to the assignment." *Basketball Mktg. Co. v. Steve & Barry's Univ. Sportswear*, 2008 U.S. Dist. LEXIS 107249, *2-3 (E.D. Pa. June 30, 2008) (quoting *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 593 (7th Cir. 2003)); *see Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982)); *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 829 (3d Cir. 2011) ("it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement.") (quoting *Imperial Residential Design v. Palms Development Group*, 70 F.3d 96 (11th Cir. 1995), and following *Eden Toys*); *Merrell v. Orion Pictures Corp.*, 1988 U.S. Dist. LEXIS 6362, *4 (D.N.J. June 6, 1988) ("the Second Circuit deemed it anomalous to permit a third party to invoke the provision of the Act against the licensee and licensor who do not dispute the existence of a license.")

---

[2] Section 204 of the Copyright Act provides:

A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.

17 U.S.C. § 204(a).

**Cowan, Liebowitz & Latman, P.C.**
Hon. Michael A. Shipp, U.S.M.J.
June 20, 2011
Page 4

The *Eden Toys* principle applies equally to deny third party infringers, such as defendants, standing to challenge a plaintiff's work-for-hire copyright ownership. In *Pem-America, Inc. v. Sunham Home Fashions, LLC*, 2003 U.S. Dist. LEXIS 16998 (S.D.N.Y. July 17, 2003), *aff'd*, 83 Fed. Appx. 369, 2003 U.S. App. LEXIS 25127 (2d Cir. 2003), the plaintiff had entered into an agreement with a company providing that designs the company created for the plaintiff would be works made for hire. Defendant challenged plaintiff's ownership claim. The court held,

> Conceding that the written works-made-for-hire agreements were not signed until after this litigation began, Sunham nevertheless lacks the necessary standing to contest the agreements. Where there is no dispute between the copyright owner and the original author about the status of the copyright, a third-party infringer has no right to challenge the transfer solely as a means of avoiding a suit for infringement. *See Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982). Thus, the Court must view Pem-America as the owner of any possible copyrights in the Underlying Designs and entitled to copyright protection for the original elements in those designs.

2003 U.S. Dist. LEXIS 16998 at *20-21. We know of no case in which the court conferred standing on an accused third-party infringer to challenge plaintiff's copyright ownership of a work for hire when the employer and employee do not dispute the employer's ownership.

Defendants' contention that "Transfer ownership [sic] from Hecquet to Renaissance, is a prima facie element of Renaissance's copyright infringement claim against Defendants," Letter, p.4, is wrong on the facts and the law. "In order to establish a claim of copyright infringement, a plaintiff must prove: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Cottrill v. Spears*, 87 Fed. Appx. 803, 805 (3d Cir. 2004). Renaissance has satisfied the first element by submitting its copyright registrations for the works at issue. *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 290-291 (3d Cir. 1991) ("Certificates of registration issued by the U.S. Copyright Office constitute *prima facie* evidence of the validity and ownership of the material."). *See* 17 U.S.C. § 410(c).

The "transfer of ownership" issue that defendants improperly seek to raise arises only where a plaintiff is <u>not</u> named as the claimant on the registration certificate submitted to the court—not the case here. In such a case the plaintiff, as "an assignee of a previously registered statutory copyright[,] has the burden of proving his chain of title because nothing in the registration certificate evidences his right to claim through the original copyright claimant." Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.11[C]. Renaissance is not such a plaintiff; Renaissance is named as claimant on each of the federal copyright registrations on which this suit is based.

"Once the plaintiff produces a valid registration certificate, the burden of proof shifts to the defendant to overcome the presumption of ownership and validity." *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 2007 U.S. Dist. LEXIS 68345, *8 (M.D.N.C. Sept. 14, 2007). That burden is steep: "The party contesting the originality of a properly registered

1248679.2

copyright must show that 'there was such an overwhelming amount of evidence of nonoriginality that reasonable and fair minded men could not have found' the designs to be original." *Yurman Design, Inc. v. Golden Treasure Imps., Inc.*, 275 F. Supp. 2d 506, 514 (S.D.N.Y. 2003), quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001); see H.R. Rep. No. 1476, 94th Cong., 2d Sess. 157 ("The plaintiff should not ordinarily be forced in the first instance to prove all of the multitude of facts that underlie the validity of the copyright unless the defendant, by effectively challenging them, shifts the burden of doing so to the plaintiff."). Defendants' burden to overcome the presumption of ownership afforded by the Renaissance registrations is even steeper: "A copyright registration is *prima facie* evidence of the validity of the copyright and plaintiff's ownership thereof. This presumption may be overcome by the presentation of evidence that the parties intended the copyright to be owned by the defendant." *Sidwell Co. v. Real Estate Data, Inc.*, 1987 U.S. Dist. LEXIS 13628 (N.D. Ill. Oct. 22, 1987) (*citing* 17 U.S.C. § 410(c); *Murray v. Gelderman*, 566 F.2d 1307, 1311 (5th Cir. 1978)) (emphasis added). There is, obviously, no such evidence here.

Defendants' assertions that this contract is "case dispositive" are fantasy. Even if defendants had standing to challenge the twenty-year arrangement between Philippe Hecquet and Renaissance—and they do not—neither defendants' unsupported assertions that "Hecquet is an independent contractor," nor their inaccurate interpretation of the Hecquet contract,[3] would approach meeting their burden. "It is the relationship that in fact exists between the parties, and not their description of that relationship, that is determinative" of copyright ownership. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 291 (2d Cir. 2002) (quoting Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 11.02[A][2]). Both M. Hecquet and Renaissance's principal were deposed, and defendants inquired as far as they felt necessary on this issue. Neither deposition (which defendants decline to quote) established the hint of a dispute over Renaissance's ownership of these designs, at any time over the twenty-year history of their relationship.

In any case, the futility of any attempt by defendants to substitute Philippe Hecquet— Renaissance's designer for its entire existence (defendants say he is a "join [sic] venturer," Letter, p.3)—as the legal owner of the designs Hecquet created for Renaissance cannot be overstated. If there were any basis for doing so—and there is none—the only result would be the joinder of, or intervention by, M. Hecquet as a co-plaintiff with Renaissance. The Copyright Act provides that "the court may require the joinder, and shall permit the intervention, of any person having or claiming an interest in the copyright." 17 U.S.C. § 501(b).

Courts have shown little patience for such maneuverings by defendants. *See, e.g., R.F.M.A.S., Inc. v. So*, 619 F. Supp. 2d 39, 57 (S.D.N.Y. 2009) ("Even if the factfinder ultimately concludes that the Registration does not reflect the proper authors and ownership, the So Defendants present no prospect, supported by evidence, that would have led the Copyright

---

[3] Defendants do not attempt to explain how the provision that "Any design produced for custom orders will be the property of RENAISSANCE CARPET & TAPESTRIES and may be reproduced in future if needed" squares with their theory.

1248679.2

Cowan, Liebowitz & Latman, P.C.
Hon. Michael A. Shipp, U.S.M.J.
June 20, 2011
Page 6

Office to reject the Application, and courts routinely reject challenges to registrations based on such technicalities that are easily corrected.").

Defendants' reference to (and providing a copy of) a March decision of the Southern District of New York, *Arista Records LLC v. Lime Group LLC*, 2011 U.S. Dist. LEXIS 28151 (S.D.N.Y. Mar. 18, 2011), to suggest some improper motive in producing the contract, is baffling. That opinion has nothing to do with transfers of ownership or standing, but instead addresses the "question of whether the infringement of a work ... prior to the registration of the copyright for that work should bar Plaintiffs from recovering a statutory damage award from Defendants with respect to that work" under section 412(2) of the Copyright Act, an issue not raised in this case. Far from having an improper motive, plaintiff voluntarily produced this contract to help put to rest defendants' recently expressed misperceptions about the issue of ownership of the copyrights in issue.

### **Defendants Are Not Prejudiced By Production of the Agreement**

Defendants' claim to be prejudiced by the voluntary production of the contract is not supportable. Because defendants never availed themselves of the numerous opportunities to seek its production, it would be far too late to complain if plaintiff did **not** produce it. Nor is plaintiff's copyright ownership implicated by plaintiff's two pending motions, a *Daubert* motion to exclude the testimony of defendants' proposed expert, and a motion for sanctions for defendants' spoliation of evidence.

Defendants' effort to link this document to the spoliation motion is obscure. The proper comparison is between defendants' withholding and destruction of evidence that was relevant to this action and was specifically called for, and plaintiff's voluntary production of materials not called for. We provided this agreement, which is consistent with plaintiff's claims of ownership of the designs, because defendants have, since the close of discovery, introduced into the discussion of this matter an argument that Philippe Hecquet, and not plaintiff, is the owner of the Renaissance designs.

Nor is there any basis to re-open discovery. Defendants have taken depositions of both parties to the agreement, inquired to their satisfaction, knew of the agreement, and declined to seek its production at either of the depositions or on any of the multiple opportunities provided by the Court. Defendants' feigned surprise at this late date that there is a contract is a red herring that should not further delay resolution of this case.

Very respectfully,

Ronald W. Meister
Attorney for Plaintiff

cc: Hon. Stanley R. Chesler, U.S.D.J. (via ECF and Express Mail)
    Jay R. McDaniel, Esq. (via ECF)

1248679.2